**Timothy J. McABEE, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 38S00–0007–CR–442.

Supreme Court of Indiana.

June 28, 2002.

Susan K. Carpenter, Public Defender of Indiana, David P. Freund, Deputy Public Defender, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

SULLIVAN, Justice.

Defendant Timothy J. McAbee was convicted of murder and robbery for shooting a fellow drug dealer to death. We affirm Defendant's conviction and sentence, finding that he failed to preserve for appeal two claims of prosecutorial misconduct, that his convictions do not violate any principles of Indiana double jeopardy law, and that his 85–year sentence is not manifestly unreasonable.

*Background*

The facts most favorable to the judgment indicate that Defendant, along with his compatriot Bobby Brummett, planned to rob and kill Tony Thompson because of Thompson's access to a large sum of money. (Brummett and Thompson had been engaged with drug transactions over the previous few years that reached $30,000 to $40,000.) Brummett and Defendant lured Thompson to Brummett's house by calling him and offering to sell him $25,000 worth of cocaine. However, they aborted their plan when Thomson brought a friend with him. Brummett gave Thompson an excuse and told him that they did not have the cocaine that day.

Defendant and Brummett rethought their plan, and bought another gun so that they could kill Thompson and anyone who was with him. After acquiring the second gun, Brummett called Thompson and told him that they were prepared to make the drug sale. When Thompson arrived at the house, Brummett's girlfriend directed Thompson to the back door where Defendant was waiting. When Thompson turned the corner to the back of the house, Defendant shot him.

Defendant was charged with Murder,[1] Conspiracy to Commit Murder, a Class A felony,[2] and Robbery by Means of a Deadly Weapon, a Class B felony.[3] Defendant was convicted of Murder and Robbery and the trial court imposed a sentence totaling 85 years.

*Discussion*

I

Defendant contends that he was denied a fair trial as a result of prosecutorial misconduct. Defendant first argues that the prosecutor committed misconduct by "telling the jury that his role was to do justice while [the defendant's] attorney's role was to do or say anything to get [Defendant] off." Defendant also argues that the prosecutor committed misconduct by repeatedly referring to Defendant by his nickname of "Smack."

A

During the opening statement, the prosecutor stated:

I want to talk a little bit, we always anticipate what's going to come from the other side, because I think that's important. And I think it's important that we recognize our rol[e]s in this case, in any criminal case.... Our role as prosecutors is to seek justice. That is our, that is what the law says, that we do. We seek justice. And basically how it works is police officers investigate crimes, they go out, they talk to the witnesses, they gather evidence, and when they're done investigating crimes they come to the prosecutor's office.... But if we don't believe that a crime has been committed, we don't file it. Then no crime has been committed, our job is done.... That is our role in the criminal justice system ... Our role is to seek justice. The

defense role is different. Defense role is to put us to the task of making sure we prove our case. And that's the way it should be ....their role is to put us to our task, to poke holes in our case. Basically say and do anything to get him off.

■ Defendant's argument here is similar to that in a line of cases in which defendants have challenged prosecutors' use of a dissenting opinion in the U.S. Supreme Court case of *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) (White, J., dissenting), on the role of prosecutors and defense attorneys. *See Coy v. State*, 720 N.E.2d 370, 372–73 (Ind.1999); *Bardonner v. State*, 587 N.E.2d 1353, 1357 (Ind.Ct.App. 1992), *trans. denied.* In *Bardonner*, Judge Stanley Miller found prosecutorial misconduct where a prosecutor, during voir dire, utilized Justice White's opinion to characterize prosecutors as ministers of justice and denigrate defense attorneys. 587 N.E.2d at 1353, 1361–62. In *Coy*, we referred to the Court of Appeals analysis in *Bardonner*, but held that the prosecutor's actions did not amount to misconduct, principally because the prosecutor's comments did not denigrate defense counsel. 720 N.E.2d at 373. While noting that "in the right circumstances such comments might improperly sway a jury in favor of conviction," *id.* (citing *Bardonner*, 587 N.E.2d 1353), we also pointed out that "it is quite ordinary for both sides in a trial to work at portraying counsel, client, and case in the best possible light. Which of these represent fair or harmless techniques and which are abusive is a call best placed in the hands of trial judges." *Id.*

---

1. Ind.Code § 35–42–1–1(1) (1998).

2. Id. § 35–42–1–1(1).

3. Id. § 35–42–5–1(2).

■ Unlike the defendants in *Bardonner* and *Coy,* Defendant did not object to the prosecutor's comments. Therefore we do not have the benefit of the trial court's discretion in determining the prejudice inflicted by the prosecutor's comments. Failure to object at trial results in waiver of an issue for appeal. *See Boatright v. State,* 759 N.E.2d 1038, 1043 (Ind.2001); *Isaacs v. State,* 673 N.E.2d 757, 763 (Ind. 1996). While Defendant invokes the doctrine of fundamental error, we find that the prosecutor's comments were not so violative of the principles of *Bardonner* and *Coy* as to constitute fundamental error.

### B

■ Defendant also argues that the prosecutor committed misconduct by "repeatedly referring to [Defendant] by his purported nickname, 'Smack.'"

During direct examination by the State, Brummett referred to Defendant as "Smack." The prosecutor then asked Brummett, "Who's Smack?" Brummett responded that "Smack" was Defendant's nickname. As the trial continued, the prosecutor referred to Defendant as "Smack" on multiple occasions. Defendant failed to object at trial, but contends that the prosecutor's use of Defendant's nickname amounted to fundamental error.

The use of a Defendant's nickname may be relevant to an issue of identity. The use of a nickname is questionable, however, where there is no apparent reason not to use a defendant's proper name and, even more so, where the nickname itself carries at least the implication of wrongdoing. In such situations, it is likely that the prosecutor uses a nickname to express to the jury a defendant's unsavory or lawless character or reputation. Indiana Evidence Rule 404(b) generally forbids the use of "[e]vidence of a person's character ... for the purpose of proving action in conformity therewith ..."

Defendant failed to object, but he argues that the prosecutor committed fundamental error. The prosecutor's reference to Defendant as "Smack" most likely violated Evidence Rule 404(b). We do not find, however, that the use of the nickname in this case amounts to fundamental error.

### II

■ Defendant contends that his convictions for both murder and Class B robbery violated his rights under Indiana's Double Jeopardy clause. Ind. Const. art. I, § 14. Specifically, Defendant argues that his robbery conviction should be reduced from a Class B felony to a Class C felony.

A person is guilty of robbery as a Class C felony if he or she "knowingly or intentionally takes property from another person or from the presence of another person: (1) by using or threatening the use of force on any person; or (2) by putting any person in fear ..." Ind.Code § 35–42–5–1. Robbery is elevated to a Class B felony if it is committed while armed with a deadly weapon or results in bodily injury to any person other than a defendant. *Id.* It is elevated to a Class A felony if "it results in serious bodily injury to any person other than a defendant." *Id.* A person who knowingly or intentionally kills another human being commits murder. Ind.Code § 35–42–1–1.

"Indiana's Double Jeopardy Clause was intended to prevent the State from being able to proceed against a person twice for the same criminal transgression." *Richardson v. State,* 717 N.E.2d 32, 49 (Ind. 1999). Here, Defendant was convicted of murder and robbery as a Class B felony. Defendant argues that the same evidence that was used to convict Defendant of the murder was also used to elevate defen-

dant's robbery conviction from a Class C to a Class B felony.

It is true that double jeopardy principles apply to enhancements. *Pierce v. State,* 761 N.E.2d 826, 829–30 (Ind.2002). Here, however, the murder conviction and the enhancement for robbery were supported on separate grounds. The robbery conviction was elevated to a Class B felony because it was *committed while armed with a deadly weapon.* The use of a deadly weapon is not an element or a basis for a murder conviction and so such an enhancement does not violate the constitutional test set forth in *Richardson.* Nor does it violate any of the rules of statutory construction and common law that sometimes apply in this regard. *See Pierce,* 761 N.E.2d at 830 (citing *Richardson,* 717 N.E.2d at 55 (Sullivan, J., concurring); at 57 (Boehm, J., concurring)).

## III

Defendant contends that his sentence was manifestly unreasonable. Defendant was found guilty of murder and robbery and sentenced to a total of 85 years in prison.

In general, the legislature has prescribed standard sentences for each crime, allowing the sentencing court limited discretion to enhance sentences to reflect aggravating circumstances or reduce it to reflect mitigating circumstances. The legislature also permits sentences to be imposed consecutively if aggravating circumstances warrant. *See Morgan v. State,* 675 N.E.2d 1067, 1073 (Ind.1996) (citing *Reaves v. State,* 586 N.E.2d 847 (Ind. 1992)). *See* Ind.Code § 35–38–1–7.1(b) (a court may consider aggravating circumstances in determining whether to impose consecutive sentences).

The presumptive sentence for murder is 55 years. *Id.* § 35–50–2–3. Up to ten years may be added for aggravating cir-

cumstances. *Id.* The presumptive sentence for robbery, a Class B felony is a term of ten years. § 35–50–2–5. Up to ten years may be added for aggravating circumstances. *Id.* The trial court gave defendant the maximum sentences of 65 years and 20 years for both murder and robbery respectively, and ordered the sentences to run consecutively.

The trial court found the following aggravating circumstances: (a) Defendant's prior criminal record; (b) Defendant's lack of remorse; and (c) Defendant's failure to recognize the seriousness of his participation in the crime. In its sentencing order the trial court noted Defendant's involvement with the juvenile court, then turned to Defendant's crimes as an adult, stating:

> In 1990 [Defendant] pled guilty to burglary a C felony, he was also charged with theft and the theft was dismissed pursuant to a plea agreement. In 1990 conversion, was dismissed as a part of the plea agreement in the other case, in 1994 battery resulting in bodily injury, a Class A misdemeanor, 1997 possession of marijuana, a Class A misdemeanor. That's a substantial amount of contact with the court system....

The trial court found Defendant's family support as the sole mitigating circumstance.

The trial court also identified the circumstances of the murder itself: that the murder was deliberate and methodical, ("[The murder was] not just something that happened on the spur of the moment. It was planned.... That's cold blooded murder.") and that the murder was committed by lying in wait, a circumstance that the trial court observed is a statutory aggravating circumstance under the death penalty statute. (Id.)

The trial court properly weighed the aggravating and mitigating circumstances and found that the aggravators far outweighed the mitigating circumstances. In light of the circumstances of the case, we do not find that the sentence is manifestly unreasonable.

*Conclusion*

The trial court is affirmed.

SHEPARD, C.J., and DICKSON, BOEHM, and RUCKER, JJ., concur.