**FOR PUBLICATION**


FILED
Oct 18 2013, 5:38 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**HILARY BOWE RICKS**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CYNTHIA L. PLOUGHE**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| AUDIE WILSON, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No. 49A02-1210-CR-846 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff, ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Kurt M. Eisgruber, Judge
Cause No. 49G01-1108-FB-60263

**October 18, 2013**

**OPINION – FOR PUBLICATION**

**BAILEY, Judge**

## Case Summary

Audie Wilson ("Wilson") was convicted, following a jury trial, of Sexual Misconduct with a Minor, as a Class B felony;[1] Attempted Sexual Misconduct with a Minor, as a Class B felony;[2] and Sexual Misconduct with a Minor, as a Class C felony.[3] He now appeals.

We affirm.[4]

## Issues

Wilson raises two issues for our review, which we restate and revise as:

I.    Whether the trial court abused its discretion when it admitted evidence of Wilson's use of aliases; and

II.   Whether the trial court committed fundamental error when it gave Jury Instruction 23.

## Facts and Procedural History

During the week of June 17, 2011, as C.C. was walking home with a friend, J.D., from summer class at John Marshall High School, the two were approached by Wilson, who was driving a gold-colored van with tinted windows. Wilson asked if the two needed a job; he said his name was "Mike" and gave them his cell phone number.

C.C. got permission from his mother to work and called Wilson, who picked up C.C. and J.D. at the Family Dollar store on Shadeland Avenue and 38th Street. Wilson

---

[1] Ind. Code § 35-42-4-9(a)(1).

[2] I.C. §§ 35-42-4-9(a)(1), 35-41-5-1.

[3] I.C. § 35-42-4-9(a).

[4] We heard oral argument on this case at The Grand in New Albany, Indiana on September 10, 2013. We thank The Grand and their guests from the Sherman Minton American Inn of Court for their hospitality, and the parties for their able advocacy.

2

had a power washer in the van, and they drove around looking for cars to wash. At one point, C.C. and Wilson had a conversation alone. The topic of C.C.'s age came up, and C.C. told Wilson that he was 15 years old and attending John Marshall High School.[5] After they had finished washing cars for the day, Wilson gave C.C. and J.D. $5 or $6 to split between themselves.

On June 17, 2011, J.D. could not join C.C., but C.C. called Wilson nonetheless. Wilson picked up C.C. in front of C.C.'s house in a different car and drove to the gold-colored van, which was parked at a Safeway parking lot near Shadeland Avenue. After they finished washing cars for the day, "[Wilson] discussed about a job [C.C.] could do, a little job," but he would not tell C.C. what the job was. (Tr. at 53.) As compensation, Wilson offered C.C. shoes, "grills," and necklaces. (Tr. at 54.) After C.C. agreed, Wilson drove to the interstate, and eventually into a downtown Indianapolis neighborhood with which C.C. was unfamiliar.

Once in the neighborhood, Wilson told C.C. "I want to go in this alley and suck your dick so you can get them things I said you could get." (Tr. at 58.) C.C. was shocked and terrified; Wilson eventually arrived at a house, and told C.C. to get out of the van. C.C. got out of the van, but was scared, and did not know what to do; he did not feel like he could run away because he was in an unfamiliar neighborhood, and he was afraid Wilson would hurt him.

Wilson and C.C. went inside the house, which had no furnishings, and had blankets covering the windows. They went upstairs; Wilson took his clothes off, and told

---

[5] At trial, Wilson testified that C.C. had told him he was sixteen years old. (Tr. at 289.) However, C.C. testified that he had told Wilson that he was fifteen years old. (Tr. at 44.)

C.C. to take his clothes off, which he did. Wilson told C.C. "to lay down so he could do the job that he said he wanted to do." (Tr. at 62.) Wilson touched C.C.'s penis, and gave C.C. oral sex. Wilson had C.C. lay on his stomach and tried to insert his penis into C.C.'s anus, but C.C. resisted, so Wilson rubbed his penis between C.C.'s legs until Wilson ejaculated.

Wilson then wiped "some clear stuff" from C.C.'s back, and they got dressed, left the house, and got back into the van. (Tr. at 65.) After stopping at a gas station to buy both of them a drink, Wilson dropped C.C. three blocks from his house.

After walking home, C.C. said "I don't feel right," and took a shower. (Tr. at 67.) When his mother asked him what was wrong, he told her what had happened, and she called the police.

On August 26, 2011, the State charged Wilson with Count I, Sexual Misconduct with a Minor, as a Class B felony; Count II, Attempted Sexual Misconduct with a Minor, as a Class B felony; and Count III, Sexual Misconduct with a Minor, as a Class C felony.

A jury trial was conducted on September 10 and 11, 2012. During direct examination, Wilson testified that he was known by the nickname "Mike." (Tr. at 285-86.) During cross-examination, the State asked Wilson about other nicknames he had used. Wilson's attorney lodged an objection, which the trial court overruled, permitting the State to continue the line of questioning. Wilson thus testified that, while he did not go by the name "Audie Poston," his mother's last name was "Poston." (Tr. at 297-98.) He further testified that he went by the name "Mr. CEO" in conjunction with a Facebook

4

account. (Tr. at 298.) He denied ever using the names Nathan Alexander or James Wright. (Tr. at 298.)

Also during the trial, Wilson tendered a proposed jury instruction which stated:

It is a defense to a charge of sexual misconduct with a minor that the Defendant reasonably believed that the child was at least sixteen (16) years of age at the time of the charged conduct.

The burden is upon the State to prove beyond a reasonable doubt that the Defendant did not reasonably believe that [C.C.] was at least sixteen (16) years of age.

(App. at 65-66.)

At the close of the State's case-in-chief, the following colloquy occurred about Wilson's proposed jury instruction:

The Court: Okay. And then the defense proposed final was the <u>reasonable belief</u> instruction.

[Wilson]: And I have no objection to the State's proposed, or I mean, excuse me, the Court's proposed final in regards to the defense.

The Court: Okay. So we will put that in. "It is a defense that the Defendant reasonably believed that C.C. was 16 years of age or older. If the Defendant proved this by a preponderance of the evidence, you must find the Defendant not guilty of sexual misconduct with a minor."

[Wilson]: No objection.

(Tr. at 278) (emphasis in original).

After the close of Wilson's case-in-chief, the parties discussed the applicability of Moon v. State, 823 N.E.2d 710 (Ind. Ct. App. 2005), trans. denied, out of the hearing of the jury. (Tr. at 308-24.) The trial court decided to follow the pattern instruction. (Tr. at 322-24.)

Among the Final Instructions given by the trial court to the jury was the following:

5

Instruction Number 23

> It is a defense that the Defendant reasonably believed that [C.C.] was sixteen years of age or older. If the Defendant proved this by a preponderance of the evidence, you must find the [D]efendant not guilty of sexual misconduct with a minor.

(App. at 70.)

At the conclusion of the trial, the jury found Wilson guilty as charged of all three counts. On October 5, 2012, the trial court entered judgment of conviction and sentenced Wilson to sixteen years imprisonment with six years suspended for Count I, six years imprisonment for Count II, and four years imprisonment for Count III, with the sentences to be served concurrently.

Wilson now appeals.

## Discussion and Decision

### Cross-Examination

Wilson contends that the trial court abused its discretion when it ruled as admissible on cross-examination evidence as to his use of nicknames.[6] The decision to admit or exclude evidence at trial is squarely within a trial court's discretion, and we afford it great deference on appeal. VanPatten v. State, 986 N.E.2d 255, 260 (Ind. 2013). We will not reverse such a decision unless it is clearly contrary to the logic and effect of the facts and circumstances of the case or misinterprets the law. Id.

In general, all relevant evidence is admissible. Ind. Evidence Rule 402. "'Relevant evidence' means evidence having any tendency to make the existence of any

---

[6] Wilson also asserts that the trial court admitted evidence of his use of aliases in contravention of Indiana Rule of Evidence 404(b), which prohibits admission of character evidence to prove action in conformity therewith. However, his argument is more properly characterized under Indiana Rule of Evidence 403.

6

fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid. R. 401. Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury[.]" Evid. R. 403. But, otherwise inadmissible evidence may become admissible where the defendant "opens the door" to questioning on that evidence. Jackson v. State, 728 N.E.2d 147, 152 (Ind. 2000). The trial court has discretion to permit the admission of even marginally relevant evidence. Thompson v. State, 671 N.E.2d 1165, 1171 (Ind. 1996).

Our Supreme Court has stated that the unnecessary, excessive, or unproved use of aliases could create a connotation of criminality sufficient to thwart the fairness of a trial. Edgecomb v. State, 673 N.E.2d 1185, 1194-95 (Ind. 1996). The use of a nickname is questionable where there is no apparent reason not to use a defendant's proper name, and even more so where the nickname itself carries at least the implication of wrongdoing. See McAbee v. State, 770 N.E.2d 802, 805 (Ind. 2002).

Here, Wilson testified during direct examination as to his use of the nickname "Mike," thus opening the door to questioning during cross-examination as to his use of other nicknames. Further, none of the nicknames explored by the State carry any implication of wrongdoing. Therefore, the use of nicknames here does not create a connotation of criminality sufficient to thwart the fairness of a trial. The trial court thus did not abuse its discretion when it admitted evidence on cross-examination as to Wilson's use of nicknames.

7

<u>Jury Instruction 23</u>

Wilson contends that the trial court abused its discretion in giving to the jury Final Instruction 23. He argues[7] that he is entitled to a new trial because the instruction improperly shifts to him the burden of proof as to whether he reasonably believed C.C. was at least sixteen years old.

Ordinarily, we review for an abuse of discretion a trial court's decision to give or refuse to give a party's tendered jury instruction. <u>Kane v. State</u>, 976 N.E.2d 1228, 1231 (Ind. 2012). An abuse of discretion occurs when the instructions, taken as a whole, mislead the jury as to the applicable law. <u>Ham v. State</u>, 826 N.E.2d 640, 641 (Ind. 2005). We consider: (1) whether the instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions that are given. <u>Kane</u>, 976 N.E.2d at 1230-31.

Here, however, Wilson failed to object at trial to Final Instruction 23, and thus he has waived appellate review of that instruction. <u>See</u> Ind. Crim. Rule 8(B); <u>Baker v. State</u>, 948 N.E.2d 1169, 1178 (Ind. 2011). Wilson seeks to avoid waiver by claiming fundamental error. The fundamental error doctrine has extremely narrow applicability. <u>Carter v. State</u>, 754 N.E.2d 877, 881 (Ind. 2001). A fundamental error is a substantial, blatant violation of basic principles rendering the trial unfair to the defendant, and applies

---

[7] Wilson also makes the bald assertion that the shifting of the burden violates "his rights to due process under the United States and Indiana Constitutions[.]" (Appellant's Br. at 19.) However, because he has failed to support this assertion with cogent argument, he has waived this issue. <u>See</u> Ind. Appellate Rule 46(A)(8)(a).

only when the actual or potential harm cannot be denied. Id. The error must be so prejudicial to the defendant's rights as to have made a fair trial impossible. Id.

Final Instruction 23 provides:

It is a defense that the Defendant reasonably believed that [C.C.] was sixteen years of age or older. If the Defendant proved this by a preponderance of the evidence, you must find the [D]efendant not guilty of sexual misconduct with a minor.

(App. at 70.) In a case involving a similar instruction, we concluded that "[t]he defendant's knowledge of the victim's age is not an element of the crime[.]" Moon, 823 N.E.2d at 715 (emphasis in original). We thus held that there was no error in assigning to the defendant the burden to prove by a preponderance of the evidence that he reasonably believed that the victim was at least 16 years old. Id. at 716.

Wilson asserts that the Moon Court erred in holding that it was proper to instruct the jury that the burden to prove the "reasonable belief" defense was wholly on the defendant. He argues that the "reasonable belief" defense negates a material element of the crime—the defendant's knowledge of the victim's age—and thus the defendant's knowledge of the victim's age must be proven beyond a reasonable doubt by the State.

We disagree.

"[I]n determining whether a statutory exception is a material element or an affirmative defense, we assess the location of the exception relative to the location of the definition of the principal offense." Lyles v. State, 970 N.E.2d 140, 143 n.3 (Ind. 2012). "If the exception is closely connected with the clause creating the offense, the exception is a material element of [the] offense" that the State must prove. Id. (citing Russell v.

9

State, 50 Ind. 174, 174 (1875)).  But if "the exception is contained in a subsequent clause or statute, the exception is an affirmative defense that must be raised by the defendant." Id. (citing Russell, 50 Ind. at 174).  Furthermore, "[a] defendant bears an initial burden of proof by a preponderance of the evidence on any affirmative defense."  Adkins v. State, 887 N.E.2d 934, 938 (Ind. 2008).  However, the prosecution bears the ultimate burden of negating beyond a reasonable doubt any defense sufficiently raised by the defendant. Bradford v. State, 675 N.E.2d 296, 300 (Ind. 1996); see also Blatchford v. State, 673 N.E.2d 781, 782-83 (Ind. Ct. App. 1996).

Here, the statute that creates the offense does not, by its terms, include a knowledge requirement as to the victim's age.  See I.C. § 35-42-4-9(a).  Further, the defense set forth by Section 35-42-4-9(c) is contained in a clause subsequent to that which defines the principal offense.[8]  Therefore, we conclude the defense does not negate an element of the crime, but instead is an affirmative defense that must be raised by the defendant and for which the defendant must bear the initial burden of proof.  We thus

---

[8] I.C. § 35-42-4-9 provides that:

> (a) A person at least eighteen (18) years of age who, with a child at least fourteen (14) years of age but less than sixteen (16) years of age, performs or submits to sexual intercourse or deviate sexual conduct commits sexual misconduct with a minor, a Class C felony.  However, the offense is:
>
>> (1) a Class B felony if it is committed by a person at least twenty-one (21) years of age[.]
>
> . . .
>
> (c) It is a defense that the accused person reasonably believed that the child was at least sixteen (16) years of age at the time of the conduct.  However, this subsection does not apply to an offense described in subsection (a)(2) or (b)(2).

10

agree with the result reached in <u>Moon</u>. And having so concluded, we hold that the giving of Final Instruction 23 was not fundamental error.[9]

## Conclusion

The trial court did not abuse its discretion when it permitted the State to cross-examine Wilson regarding his use of other nicknames. Additionally, there was no fundamental error in giving Final Instruction 23.

Affirmed.

KIRSCH, J., and PYLE, J., concur.

---

[9] Our conclusion does not address the propriety of Final Instruction 23 as given. Beyond the issue addressed, neither party challenged the language of this instruction. An instruction, when given, must correctly state the law. <u>See</u> <u>Ham</u>, 826 N.E.2d at 641; <u>Kane</u>, 976 N.E.2d at 1230-31. We believe the instruction as given was erroneous. However, any error in this instance inured to Wilson's benefit.

11