**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**CARA SCHAEFER WIENEKE**
Special Assistant to the
State Public Defender
Wieneke Law Office, LLC
Plainfield, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELLEN H. MEILAENDER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| WILLIAM MALLORY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 84A01-1312-CR-555 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE VIGO SUPERIOR COURT
The Honorable Michael J. Lewis, Judge
Cause No. 84D06-1208-MR-2828

**September 9, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

William Mallory was convicted of one count of Murder,[1] a felony, two counts of Attempted Murder,[2] a class A felony, and one count of Carrying a Handgun Without a License,[3] a class A felony. At the close of trial, the trial court refused to instruct the jury on self-defense. Mallory now appeals, claiming that there was sufficient evidence in the record to entitle him to a jury instruction on self-defense. Mallory also argues that his sentence was inappropriate in light of the nature of the offenses and his character. Finding that the trial court did not abuse its discretion in refusing to instruct the jury on self-defense and that Mallory's sentence was not inappropriate, we affirm.

## FACTS

On October 23, 2012, Mallory went with some friends to a bar in Terre Haute. While there, Mallory was confronted by Dante Pettus, who was upset about some comments that Mallory had made to Pettus's former girlfriend. The two men exchanged a few words and then separated. Mallory and Pettus confronted each other two more times while in the bar. The conversations were heated but did not result in violence.

Shortly before the bar closed, Mallory went to his car and retrieved a loaded gun. He stood outside, accompanied by his friend. Pettus and his friends came outside, and another verbal confrontation between Mallory and Pettus ensued. Mallory drew his gun and fired six or seven shots directly at Pettus, Dustin Kelly, and Terrance Trotter. Pettus

---

[1] Ind. Code § 35-42-1-1(1).

[2] I.C. § 35-42-1-1(1); Ind. Code § 35-41-5-1.

[3] Ind. Code § 35-47-2-1.

and Trotter were both shot as they were running away. Both men suffered life-threatening injuries but survived. Kelly, who was initially shot in the chest and then shot again as he lay on the ground, died.

On October 24, 2013, a jury convicted Mallory of one count of murder, two counts of attempted murder, and one count of carrying a handgun without a license. At the close of trial, Mallory tendered a jury instruction on self-defense. The trial court refused to so instruct the jury, finding that the evidence did not support the instruction. Mallory was sentenced to fifty-five years for the murder conviction, thirty years and twenty-five years for the two attempted murder convictions, and one year for the carrying a handgun without a license conviction. The trial court ordered all sentences to run consecutively, resulting in an aggregate sentence of 111 years. Mallory now appeals.

## DISCUSSION AND DECISION

### I. Jury Instruction on Self-defense

First, Mallory argues that the trial court erred by denying his request for a jury instruction on self-defense. We review a trial court's refusal to give a tendered jury instruction for an abuse of discretion. Wilson v. State, 4 N.E.3d 670, 675 (Ind. Ct. App. 2014).

As a general rule, a defendant in a criminal case is entitled to have the jury instructed on any theory of defense that has some foundation in the evidence.[4] Dayhuff v.

---

[4] The text of Mallory's tendered instruction does not appear in the record before this Court. The reason for its omission from the trial record is unknown. However, because we find that an instruction on self-defense was not proper in this case, it is unnecessary to consider whether Mallory has waived the issue.

3

State, 545 N.E.2d 1100, 1102 (Ind. Ct. App. 1989). This rule applies even if the evidence is weak or inconsistent. Id. To prevail on a claim of self-defense, a defendant must show that he: (1) was in a place he had a right to be; (2) did not provoke, instigate, or participate willingly in the violence; and (3) had a reasonable fear of death or great bodily harm. Wilson v. State, 770 N.E.2d 799, 800 (Ind. 2002). A defendant is justified in using deadly force only if he "reasonably believes that that force is necessary to prevent serious bodily injury . . . ." I.C. § 35-41-3-2(c). The amount of force that the defendant may use to protect himself must be proportionate to the urgency of the situation. Harmon v. State, 849 N.E.2d 726, 730-31 (Ind. Ct. App. 2006). One who is assaulted in a manner that does not appear to threaten great bodily harm may not purposely kill in self-defense. Loyd v. State, 272 Ind. 404, 408, 398 N.E.2d 1260, 1265 (Ind. 1980).

In this case, we must determine whether there is some evidence in the record that would have made an instruction on self-defense proper. Mallory must first show that he was in a place he had a right to be. Wilson, 770 N.E.2d at 800. Because it is not disputed that Mallory had a right to be at the bar, we turn to the second prong of the test. A defendant must show that he did not provoke, instigate, or participate willingly in the violence in order to prevail on a claim of self-defense. Id. In other words, a defendant must show that he acted without fault. White v. State, 699 N.E.2d 630, 635 (Ind. 1998).

Mallory argues that there is evidence establishing that he acted without fault. We cannot agree. The record shows that, before the final confrontation ensued, Mallory had already left the bar and gotten into his vehicle. At that point, Mallory retrieved a gun and

4

loaded it and waited at the scene for Pettus to exit the bar. Mallory notes that "when [he] exited the bar before his friend, he told police that he was concerned for his friend's safety because he knew there would be a confrontation again in the parking lot. So he armed himself with a weapon." Appellant's Br. p. 12-13. The evidence clearly established that Mallory had ample opportunity to deescalate the conflict and make it home safely. Instead, Mallory chose to arm himself and lie in wait for another confrontation.

Although it is true that a defendant is entitled to a jury instruction that has some foundation in the evidence, Mallory has not pointed us to any evidence in the record indicating that he acted without fault. Mallory did not have to return to the parking lot and escalate the situation. In other words, it was reasonable for the trial court to conclude that Mallory was at fault for arming himself and waiting in the parking lot for a confrontation to ensue.

As to the third prong, Mallory points to no evidence which tends to show that he had a reasonable fear of death or great bodily harm. Mallory notes: "It was not until Pettus and one of his friends drew their arms back in a swinging motion to punch Mallory that Mallory pulled out his weapon and shot them." Appellant's Br. p. 13. Mallory may have been in apprehension of getting punched, but a punch is very unlikely to result in death or great bodily harm. Even if Pettus were about to punch Mallory, these facts do not give rise to a reasonable belief that deadly force was necessary to prevent serious bodily injury.

Mallory has failed to point to any evidence in the record showing that he was not at fault or that he had a reasonable fear of death or great bodily harm. He has thus failed to show that there is a foundation in the evidence to support his claim of self-defense. Consequently, the trial court did not abuse its discretion in refusing to instruct the jury on self-defense.

## II. Appropriateness of Mallory's Sentence

Mallory next argues that his 111-year sentence is inappropriate in light of the nature of the offense and his character. Mallory received a fifty-five year sentence for his murder conviction, which is the advisory term for murder. Ind. Code § 35-50-2-3. Mallory was also convicted of two counts of attempted murder, which has a potential sentence of twenty to fifty years, with the advisory term being thirty years. I.C. § 35-50-2-4. Mallory was sentenced to thirty years and twenty-five years for these two convictions. Mallory was also sentenced to one year for carrying an unlicensed handgun.

Indiana Appellate Rule 7(B) allows this Court to revise a sentence if, "after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." We give deference to the decision of the trial court, recognizing the special expertise of the trial court in sentencing decisions. Taylor v. State, 891 N.E.2d 155, 162 (Ind. Ct. App. 2008). The question is not whether a different sentence would be more appropriate, but rather, whether the defendant's sentence is inappropriate. Steinberg v. State, 941 N.E.2d

6

515, 535 (Ind. Ct. App. 2011). The defendant has the burden of persuading this Court that the sentence is inappropriate. <u>Steinberg</u>, 941 N.E.2d at 535.

As to the nature of the offenses, Mallory has killed one victim and inflicted serious physical harm on two others. Mallory chose to escalate a situation that he could have easily ended, and he chose to shoot a loaded gun when such force was clearly unnecessary. Mallory continued to shoot his victims even as they were running away or on the ground dying. We note that the imposition of consecutive sentences is appropriate in cases involving multiple victims. <u>Wright v. State</u>, 818 N.E.2d 540, 551 (Ind. Ct. App. 2004). Additionally, we observe that the trial court has imposed sentences at or below the advisory terms.

As to his character, Mallory points out that this is his first criminal conviction and that he is at a low risk of reoffending. Indeed, the trial court noted the fact that this was Mallory's first criminal conviction as a mitigating circumstance. Sent. Hr. p. 38. However, the trial court found that the aggravating circumstances outweighed the mitigating circumstances. The trial court considered the fact that Mallory showed no remorse throughout the trial as well as the manner in which Mallory killed his victim, executing him as he lay on the ground dying. In the end, the trial court imposed the advisory sentences for each offense, resulting in a 111-year sentence, significantly less than the maximum 166-year sentence authorized by statute.

In reviewing sentences, this Court's principal role is to leaven the outliers, and not to impose a different result that we believe to be more correct. <u>Cardwell v. State</u>, 895

7

N.E.2d 1219, 1225 (Ind. 2008). We do not believe this sentence is an outlier.  We find that in light of the nature of Mallory's offenses and his character, Mallory's sentence was not inappropriate.

The judgment of the trial court is affirmed.

KIRSCH, J., and ROBB, J., concur.