## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**
Oct 08 2015, 8:46 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Patricia Caress McMath<br>Marion County Public Defender<br>Indianapolis, Indiana | Gregory F. Zoeller<br>Attorney General of Indiana<br><br>Katherine Modesitt Cooper<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Cortez Boxley,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | October 8, 2015<br><br>Court of Appeals Case No. 49A02-1503-CR-171<br><br>Appeal from the Marion Superior Court.<br>The Honorable Virginia Caudill, Judge Pro Tempore.<br>Cause No. 49F18-1411-F6-50410 |

**Barteau, Senior Judge**

## Statement of the Case

Cortez Boxley appeals from his conviction after a bench trial of one count of attempted residential entry[1] charged as a Level 6 felony. We reverse and remand for a new trial.

## Issue

Boxley presents the following dispositive issue for our review: whether the trial court erred by failing to consider Boxley's mistake-of-fact defense believing that residential entry was a strict liability offense for which there is no specific intent required.

## Facts and Procedural History

On November 5, 2014, at approximately 6:00 p.m., Laura Peak and her ten-year-old daughter were inside the living room of their townhouse in the Churchill Ranch Apartment complex in Marion County. They heard someone jiggling the doorknob in an attempt to enter the front door. Peak opened the front door because she guessed there might be children playing outside her door. However, when she opened the front door, she encountered Boxley, a man she did not know.

When Boxley placed his foot inside Peak's doorway, she yelled at him, asked him what he was doing, pushed him out of the doorway, and closed and locked

---

[1] Ind. Code § 35-43-2-1.5 (2013) (residential entry); Ind. Code § 35-41-5-1 (2014) (attempt).

the front door. Peak immediately dialed 911. Boxley remained outside Peak's door jiggling the doorknob while Peak and her daughter retreated upstairs. Peak was frightened by Boxley's actions, called 911 a second time, and asked the police officers to hurry.

[5] Officer John Clark of the Lawrence Police Department responded to the dispatch and observed Boxley, who was bent over at Peak's door "trying to mess with the door handle." Tr. p. 28. Officer Clark ordered Boxley to step away from the door, but Boxley did not respond to that command. Officer Clark thought he observed Boxley attempt to insert a key into the lock of the front door. Officer Clark informed Boxley several times that if he did not step away from the front door, the officer would use a taser. Officer Clark repeated his command several more times to no avail. Instead, Boxley continued to try to get in the front door. In the end, Officer Clark used his taser thereby allowing another officer to handcuff Boxley. Officer Clark observed that Boxley seemed "completely out of it" and "appeared to be on something." *Id.* at 32. Officer Clark called the medics for assistance.

[6] As a result of those events, the State charged Boxley with attempted residential entry. The charging information stated as follows:

> On or about November 5, 2014, [Boxley] did attempt to commit the crime of Residential Entry, by engaging in conduct which constitutes a substantial step toward the commission of said crime of Residential Entry, that is: pushed the door open and attempted to push his way past Laura Peak when she cracked the door open.

Appellant's Appendix p. 15.  At trial, Boxley testified that his sister lived in a townhouse in the same apartment complex.  He had a key to her townhouse which he had been to multiple times.  Boxley testified that earlier on that date he had smoked a cigarette that contained embalming fluid and "hit the drink one time, a couple of times."  Tr. pp. 35-36.  He claimed that the only thing he could remember was bending down to the door with the key.  He did not recall talking to Peak and stated he "was at the wrong address, the wrong door."  *Id.* at 38.

[7]     During closing argument, Boxley's counsel argued that Boxley was "in a blackout state" and did not see Peak or anything else when she opened the door.  *Id.* at 42.  While conceding that intoxication was not a valid defense to the charged crime, Boxley's counsel argued as follows:

> I do believe that [Boxley's] intoxication led him to make a mistake about where he was.  [Boxley] did not intend to enter Ms. Peak's address.  He was intending to go to his sister's house who [sic] lived in a townhouse in the same apartment complex. Anybody who has ever been to an apartment complex knows that everything looks the same.  And if you are in some state of intoxication—you know, there are jokes about that all the time. There have commercials about people who live in those cookie cutter neighborhoods and, you know, you have a drink and you go home and you can't find your house.

*Id.* at 43.  Boxley's counsel explained that "[Boxley] was intoxicated.  He made a mistake about which house he was at.  He never intended to enter or tried to enter Ms. Peak's house.  He was trying to get into his sister's house."  *Id.* at 44. The State argued that Boxley admitted he put himself in an intoxicated state

and, therefore, could not use the mistake-of-fact defense to negate his culpability for the crime.

[8] The trial court stated the following:

> With all of that said, I will say that misapprehension of one's circumstances is not a defense and intoxication as is set forth by both the case law as well [as] the statute is also not a defense. Certainly it might be considered [a] mitigating circumstances [sic] if this was, say, the first time the gentleman had ever engaged in smoking—I can't even believe I'm saying this— embalming fluid, but it is, in fact, not a defense.

Tr. p. 45. The trial court then found Boxley guilty of attempted residential entry as a Level 6 felony. The abstract of judgment states under the crime charged "35-43-2-1.5/F6: Residential Entry break and enter dwelling NOTE— this does not require any intent." Appellant's Appendix p. 12. Boxley now appeals.

## Discussion and Decision

[9] Boxley challenges his conviction for attempted residential entry, contending that the trial court erred by failing to consider his mistake-of-fact defense.

[10] In order to establish that Boxley committed the offense of attempted residential entry, the State was required to prove beyond a reasonable doubt that Boxley knowingly or intentionally broke and entered Peak's townhome. Ind. Code § 35-43-2-1.5. Because the crime was charged as an attempt, the State was required to prove that Boxley acted with the culpability required for the commission of the crime and engaged in conduct constituting a substantial step

toward the commission of that crime. Ind. Code § 35-41-5-1. In addition, breaking is established by showing that even slight force was used to gain unauthorized entry. *Carson v. State*, 963 N.E.2d 670, 683 (Ind. Ct. App. 2012), *trans. denied.*

[11] The burden of proving each element of a criminal offense beyond a reasonable doubt rests with the State. *Geljack v. State*, 671 N.E.2d 163, 164 (Ind. Ct. App. 1996). A defendant bears an initial burden of proof by a preponderance of evidence on any affirmative defense he raises. *Wilson v. State*, 4 N.E.3d 670, 676 (Ind. Ct. App. 2014), *trans. denied.* However, it is the State that bears the burden of negating beyond a reasonable doubt any defense sufficiently raised by the defendant. *Id.*

[12] Indiana Code section 35-41-3-7 (1977) provides that "[i]t is a defense that the person who engaged in the prohibited conduct was reasonably mistaken about a matter of fact, if the mistake negates the culpability required for commission of the offense."

[13] Here, Boxley testified that his sister lived in a townhouse in the same apartment complex as Peak. He further testified that he mistakenly believed he was at the door of his sister's townhouse and was trying to open the door with a key his sister had given to him to use. Boxley's testimony established that he was aware that he was trying to enter someone's house, but was mistaken about whose house he was trying to enter. If he were in fact entering his sister's townhouse, he would not have committed a criminal offense, as the entry

would have been authorized. However, since he was mistaken about whose house he was attempting to enter, his attempt to enter Peak's townhouse was unauthorized. Boxley's intoxication was relevant to the determination of whether he had made an honest and reasonable mistake-of-fact, but intoxication is not available to him as a defense under these facts.

[14] Boxley's counsel acknowledged that an intoxication defense was unavailable to him, but asked the trial court to consider the mistake-of-fact defense. The court declined to do so, asserting that the State need not prove the element of intent. That belief was further expressed in the abstract of judgment.

[15] The trial court mistakenly believed that the State need not prove the element of intent. Therefore, the trial court also mistakenly declined to consider Boxley's mistake-of-fact defense. We must reverse Boxley's conviction and remand this matter to the trial court for a new trial during which the trier of fact should consider Boxley's mistake-of-fact defense. In doing so, we express no opinion on the merits of the defense.

## Conclusion

[16] In light of the foregoing, we reverse Boxley's conviction and remand the matter for a new trial.

[17] Reversed and remanded for a new trial.

Robb, J., and Pyle, J., concur.