## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 01 2018, 5:26 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

R. Thomas Lowe
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Timothy Samples,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | March 1, 2018<br><br>Court of Appeals Case No.<br>10A01-1702-CR-425<br><br>Appeal from the Clark Circuit<br>Court<br><br>The Honorable Andrew Adams,<br>Judge<br><br>Trial Court Cause No.<br>10C01-1410-FB-219 |

**Altice, Judge.**

**Case Summary**

Timothy P. D. Samples appeals following his convictions for two counts of sexual misconduct with a minor, one as a Class B felony and one as a Level 4 felony.[1] Samples raises the following issues on appeal:

> 1. Did the State commit prosecutorial misconduct rising to the level of fundamental error?

> 2. Did the State present sufficient evidence to support Samples's convictions?

> 3. Did the trial court abuse its discretion in calculating credit time?

We affirm.

## Facts & Procedural History

Samples and T.M. have been friends since both men were eighteen years old. In early 2014, Samples and T.M. worked together, and T.M. often brought S.M., his then-fourteen-year-old daughter, into the office. In April 2014, Samples, who was thirty-five years old at the time, began exchanging sexually explicit Facebook messages with S.M. T.M. discovered the messages and confronted Samples, telling him, "she's fucking fourteen." *Transcript* at 12. At the time, Samples appeared remorseful and blamed his actions on his drinking

---

[1] The charges were based on two separate incidents, one occurring shortly before and the other occurring shortly after the effective date of the statutory amendments replacing the former Class A through D felony classification system with the current Level 1 through 6 system.

and drug use. T.M. took away S.M.'s smartphone and deleted her Facebook account, and believed that the relationship between S.M. and Samples had come to an end.

[4] To the contrary, Samples continued to pursue a relationship with S.M., albeit by more secretive means. Around the end of April 2014, Samples contacted S.M. through a classmate and provided her with a fake Facebook account they used to communicate. The sexually explicit messaging continued, and shortly after S.M.'s fifteenth birthday in late June 2014, Samples picked S.M. up near her home, drove her to a nearby parking lot, and had sexual intercourse with her in the back of his SUV. Afterwards, Samples dropped S.M. off near her home and left.

[5] Samples's next encounter with S.M. occurred on July 20, 2014. Samples again picked S.M. up and drove her to a different parking lot, and the two engaged in oral sex and sexual intercourse in the back of Samples's SUV. A police officer noticed the SUV and pulled in to investigate because it matched the description of a stolen vehicle. When the officer pulled up behind the SUV, he saw that it was rocking side to side. Samples and S.M. were engaged in sexual intercourse at that point, and when Samples looked up and saw the police car, he said, "I'm caught." *Id.* at 53.

[6] Samples quickly got into the driver's seat and drove off with the police officer in pursuit. Samples told S.M. to get dressed and when he got close to her apartment complex, he told her to get out and run. S.M. did so, and when the

officer shouted at her to stop, she did not comply. The officer then stopped Samples's SUV and ordered him out of the vehicle. Samples claimed that the girl who had run from the vehicle was a nineteen-year-old named Misty whom he had met on a dating website, but a resident of the apartment complex identified her as S.M.

[7] On July 22, 2014, Samples consented to a police interview, in which he admitted to having oral sex with S.M. on July 20, but denied that sexual intercourse had occurred on that date. Samples also admitted that he had engaged in sexual intercourse with S.M. on another occasion. Samples stated further that S.M. claimed to be sixteen years old, which he believed was the age of consent.

[8] As a result of these events, the State charged Samples with two counts of sexual misconduct with a minor. A two-day jury trial commenced on November 16, 2016, at the conclusion of which Samples was found guilty as charged. On January 26, 2017, Samples was sentenced to concurrent terms of fifteen years with five years suspended for the Class B felony and twelve years with six years suspended for the Level 4 felony. Samples now appeals.

## 1. Prosecutorial Misconduct

[9] Samples first argues that the State committed prosecutorial misconduct by eliciting testimony concerning Samples's invocation of his right to counsel and by making certain comments during closing argument. Conceding that he

failed to properly preserve this issue, Samples argues that the allegedly improper conduct resulted in fundamental error.

> In reviewing a claim of prosecutorial misconduct properly raised in the trial court, we determine (1) whether misconduct occurred, and if so, (2) "whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected" otherwise. . . . To preserve a claim of prosecutorial misconduct, the defendant must—at the time the alleged misconduct occurs—request an admonishment to the jury, and if further relief is desired, move for a mistrial.

> Our standard of review is different where a claim of prosecutorial misconduct has been procedurally defaulted for failure to properly raise the claim in the trial court, that is, waived for failure to preserve the claim of error. The defendant must establish not only the grounds for prosecutorial misconduct but must also establish that the prosecutorial misconduct constituted fundamental error. Fundamental error is an extremely narrow exception to the waiver rule where the defendant faces the heavy burden of showing that the alleged errors are so prejudicial to the defendant's rights as to "make a fair trial impossible." In other words, to establish fundamental error, the defendant must show that, under the circumstances, the trial judge erred in not *sua sponte* raising the issue because alleged errors (a) "constitute clearly blatant violations of basic and elementary principles of due process" and (b) "present an undeniable and substantial potential for harm." . . . Fundamental error is meant to permit appellate courts a means to correct the most egregious and blatant trial errors that otherwise would have been procedurally barred, not to provide a second bite at the apple for defense counsel who ignorantly, carelessly, or strategically fail to preserve an error.

*Ryan v. State*, 9 N.E.3d 663, 667-69 (Ind. 2014) (citations, footnotes, and emphasis omitted).

[10]  Samples first argues that the State committed prosecutorial misconduct when it elicited testimony from the investigating detective that Samples invoked his right to counsel during his police interview. It is well settled that the use of a defendant's assertion of his right to remain silent and/or his right to counsel, either to impeach or as substantive evidence, violates the Fourteenth Amendment due process clause. *Willsey v. State*, 698 N.E.2d 784, 791-92 (Ind. 1998) (citing, *inter alia*, *Doyle v. Ohio*, 426 U.S. 610 (1976), and *Wainwright v. Greenfield*, 474 U.S. 284 (1986)). This rule does not, however, bar any mention whatsoever of a defendant's decision to invoke his rights—the central question is the particular use to which such evidence is put. *Id.* at 793. That is, the prosecution may not use a defendant's decision to remain silent or seek the advice of counsel in order to create an inference of guilt. *Id.* at 792.

[11]  In this case, the investigating detective testified that he was unable to complete his interview of Samples because Samples invoked his right to counsel. But nothing in the record suggests that the State intentionally elicited this testimony. More importantly, the State did not comment on or otherwise "use" the testimony for any reason, let alone to create an inference of guilt or lack of credibility.[2] To the contrary, it was Samples himself who made use of the

---

[2] We also note that the jury was instructed that it was not to consider Samples's decision to remain silent in any way in determining his guilt or innocence.

testimony: he emphasized that he invoked his right to counsel after the detective said that S.M. was only fifteen, hoping that the jury would infer that up to that point he believed that she was sixteen, that his sexual contact with her was therefore legal, and that he had no need for a lawyer. *Transcript* at 170-76, 216-17. Accordingly, the State did not commit misconduct in relation to the detective's testimony that Samples invoked his right to counsel.

[12] Samples next argues that the State committed misconduct in closing argument by once referring to a statement Samples made during his police interview as testimony. It is apparent to us that the prosecutor merely misspoke, and Samples makes no attempt to explain how this one passing misstatement could have harmed him, particularly given that the jury was well aware that Samples had not testified. The prosecutor's statement did not place Samples in grave peril, and it certainly did not rise to the level of fundamental error.

[13] Finally, Samples takes issue with the prosecutor's statements in closing argument that the onus was on Samples to know S.M.'s age. Samples argues that this was a misstatement of the applicable law, and in support, he directs our attention to Ind. Code § 35-42-4-9(c), which provides that "[i]t is a defense that the accused person reasonably believed that the child was at least sixteen (16) years of age at the time of the conduct."

[14] As this court has explained, knowledge of the victim's age is not an element of the crime of sexual misconduct with a minor. *Wilson v. State*, 4 N.E.3d 670, 676 (Ind. Ct. App. 2014), *trans. denied.* Rather, it is an affirmative defense that that

a defendant reasonably believed that the victim was at least sixteen years old. *Id.* at 677. Accordingly, the defendant bears the initial burden of establishing his reasonably mistaken belief as to the victim's age by a preponderance of the evidence. *Id.* at 676-77. Once the defendant has sufficiently raised such a defense, the prosecution bears the ultimate burden of negating it beyond a reasonable doubt. *Id.* at 676.

[15] In closing argument, the State discussed the affirmative defense set forth in I.C. § 35-42-4-9(c) and accurately stated that Samples bore the burden of establishing his reasonable belief that S.M. was sixteen or older by a preponderance of the evidence. It was in discussing this affirmative defense that the State asserted that the onus was on Samples to know S.M.'s age. When viewed in this context, we believe the prosecutor's statements in this regard were a fair statement of the law. Moreover, to the extent that these statements might be viewed as an imprecise statement of the law, we note that the jury received clear instructions on the affirmative defense set forth in I.C. § 35-42-4-9(c). Under these circumstances, we cannot conclude that the prosecutor's statements placed Samples in grave peril, and they certainly did not rise to the level of fundamental error.

## 2. Sufficiency of the Evidence

[16] Samples next argues that the State presented insufficient evidence to support his convictions. In reviewing a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of witnesses. *Atteberry v.*

*State*, 911 N.E.2d 601, 609 (Ind. Ct. App. 2009). Instead, we consider only the evidence supporting the conviction and the reasonable inferences flowing therefrom. *Id.* If there is substantial evidence of probative value from which a reasonable trier of fact could have drawn the conclusion that the defendant was guilty of the crime charged beyond a reasonable doubt, the judgment will not be disturbed. *Baumgartner v. State*, 891 N.E.2d 1131, 1137 (Ind. Ct. App. 2008). It is not necessary that the evidence overcome every reasonable hypothesis of innocence; rather, the evidence is sufficient if an inference may reasonably be drawn from it to support the conviction. *Drane v. State*, 867 N.E.2d 144, 147 (Ind. 2007). Further, the uncorroborated testimony of a single witness is sufficient to support a conviction, even where the witness in question is the victim. *Ferrell v. State*, 565 N.E.2d 1070, 1072-73 (Ind. 1991).

[17] In order to convict Samples of sexual misconduct with a minor as a Class B/Level 4 felony, the State was required to prove that Samples, while over the age of twenty-one, engaged in sexual intercourse or other sexual conduct with S.M., a child at least fourteen years of age but less than sixteen years of age. *See* I.C. § 35-42-4-9. Samples does not dispute that he engaged in sexual intercourse and other sexual conduct with S.M. while she was fifteen years old, and he concedes that he was well past the age of twenty-one when he did so. Instead, he invokes the affirmative defense that he reasonably believed that S.M. was at least sixteen years of age at the time of the conduct. *See* I.C. § 35-42-4-9(c). In making this argument, Samples asks us to disregard the testimony of S.M. and T.M. as incredibly dubious.

[18] The doctrine of incredible dubiosity allows a reviewing court to reevaluate the credibility of a witness when "a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence." *Fajardo v. State*, 859 N.E.2d 1201, 1208 (Ind. 2007). "Application of this rule is rare and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it." *Id.* The rule does not apply when testimony is corroborated by additional witnesses or circumstantial evidence. *Thompson v. State*, 765 N.E.2d 1273, 1274 (Ind. 2002).

[19] The incredible dubiosity rule has no application here. S.M. testified that she and Samples talked about her age "over and over" because they were afraid of being caught and knew that Samples would go to jail if that happened. *Transcript* at 40, 49. Moreover, when T.M. confronted Samples about the sexually explicit messages he discovered in April 2014, just a few months before the offenses in this case took place, he told Samples, "she's fucking fourteen." *Id.* at 12. S.M. corroborated her father's testimony in this regard. Further, Samples had known T.M. for many years and they worked together at the time of the offenses. S.M. had accompanied her father to work on multiple occasions. Moreover, Samples went so far as to create fake Facebook profiles to allow him to pursue a relationship with S.M. in secret, and he lied about S.M.'s name and age to the officer who stopped him after the July 20, 2014 offense. In short, neither S.M. nor T.M. was a sole witness, there is nothing inherently improbable or incredibly dubious about their testimony, and their testimony is not uncorroborated. Samples's incredible dubiosity argument is a

thinly veiled request to reweigh the evidence and judge the credibility of witnesses, which we will not indulge.

### 3. Credit Time

[20] Finally, Samples argues that the trial court erred in calculating the amount of credit time to which he was entitled for time spent on community corrections day reporting and work release prior to trial. Presentence jail time credit is a matter of statutory right rather than judicial discretion. *Weaver v. State*, 725 N.E.2d 945, 948 (Ind. Ct. App. 2000). "Matters of statutory interpretation, which inherently present a pure question of law, are reviewed *de novo*." *Shepard v. State*, 84 N.E.3d 1171, 1172 (Ind. 2017).

[21] Samples claims, without citation to the record, that he is entitled to credit for 703 days served on community corrections day reporting and work release, as well as one additional day served in jail. Because Samples has provided no evidentiary support for this assertion, it is waived. *See Legacy Healthcare, Inc. v. Barnes & Thornburg*, 837 N.E.2d 619, 639 n. 29 (Ind. Ct. App. 2005) (declining to "scour the record in search of evidence in support of [a litigant's] claims"), *trans. denied*; *Davis v. State*, 835 N.E.2d 1102, 1113 (Ind. Ct. App. 2005) (explaining that "[a] party waives an issue where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record"), *trans. denied*.

[22] Waiver notwithstanding, we note that during the sentencing hearing, the State and defense counsel seemed to be in agreement that Samples was entitled to

more credit time than the amount reflected in the Pre-Sentence Investigation Report (PSI). Neither side, however, provided the trial court with an alternate calculation. Accordingly, the trial court explained that defense counsel could "submit for additional days for that period that was not outlined in the [PSI]." *Transcript* at 243. Samples has not yet filed a motion for additional credit time, but he remains free to do so. Remand is not necessary because the trial court must address the merits of a motion for jail time credit at any time, so long as the motion identifies a sufficient factual basis for an award of additional credit time. *Weaver*, 725 N.E.2d at 948.

[23] Judgment affirmed.

[24] May, J. and Vaidik, C.J., concur.