**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 11, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

MARIO DEVONNE WASHINGTON,
SR., a/k/a Mario Washington,

      Defendant-Appellant.

No. 12-2045
(D.C. No. 2:10-CR-03160-RB-2)
(D.N.M.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE**, Chief Judge, **KELLY**, and **GORSUCH**, Circuit Judges.

---

Mario Washington and Alicia Unger were caravanning along a New Mexico highway early one morning in separate cars. When a Border Patrol agent saw Ms. Unger slow to 25 miles per hour in a 75 miles per hour zone and Mr. Washington speed up and take off, the agent decided to stop Ms. Unger's car even as the other car disappeared in the distance. After Ms. Unger gave suspicious responses to a variety of questions, the agent asked if she would consent to a search of her car.

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

She agreed and soon enough forty-two pounds of marijuana were found in the trunk.  At that point, an agent noticed Ms. Unger sending a text message that read "goin to jail. I got this."  Confronted with this, Ms. Unger admitted she was transporting the marijuana cross-country for Mr. Washington and that it was Mr. Washington's car she had been following.

After a search for Mr. Washington's car, Border Patrol agents located it in the early morning hours parked in a motel parking lot.  After contacting the manager, they learned that Mr. Washington and his cousin, Michael Martin, were staying in Room 41.  The manager offered them a room key, but the agents declined and they chose to knock on the door instead.  Eventually, Mr. Martin opened the door and admitted that the car belonged to Mr. Washington.  The agents then asked for Mr. Washington to step out of the room.  He did so and at that point — about 4:30 a.m. — both men were arrested.

During the course of the detention, the officers learned that Ms. Unger's cell phone provider was Sprint; they contacted Sprint; and using Sprint's GPS technology they were able to learn that the phone that received Ms. Unger's text message was still located in Room 41 of the motel.  With this information gleaned from Ms. Unger's phone and Sprint, the officers returned to the motel around 1:30 p.m., well after check-out time, and searched the room.  They found the cell phone under the bathroom sink, its screen smashed, in a crevice near the wall.

Now before the district court and charged with various drug crimes, Mr. Washington moved to suppress various pieces of evidence from his criminal proceeding, including the damaged cell phone. While the district court granted the motion in other respects, it held the cell phone admissible. The court agreed with Mr. Washington that his arrest had been unlawful. While probable cause existed at the time of his arrest to think he was involved in the illegal drug trafficking, the court held that officers should have obtained a warrant and exigent circumstances did not obviate the need for one. Still, the court held that the discovery of the cell phone wasn't tainted by the unlawful arrest because, among other things, Mr. Washington had no reasonable expectation of privacy to the motel room in general after check-out time, *see United States v. Croft*, 429 F.2d 884, 887 (10th Cir. 1970). Alternatively and more modestly, the court held that Mr. Washington had no reasonable expectation of privacy in the phone in particular because he had "clearly abandoned the phone under the sink, smashing the screen and making it unusable, and he apparently intended that it remain there after his rental period for the room expired." D.Ct. Op. at 19 (citing *United States v. Denny*, 441 F.3d 1220, 1227-28 (10th Cir. 2006)).

It's unclear why the government needs the broken phone to pursue its case against Mr. Washington. As best we can tell, Mr. Washington doesn't now seek to suppress Ms. Unger's text message or the evidence showing that Sprint was able to track the recipient phone to Mr. Washington's motel room. Let alone

much other evidence against Mr. Washington (including the convoy, the drugs found in Ms. Unger's car, Ms. Unger's confession that she was acting at Mr. Washington's behest). Amid so much other inculpatory evidence the incremental evidentiary value of the phone to the government seems pretty slight. But we take cases as they come and we cannot say the district court committed reversible error in holding the phone admissible.

The parties expend considerable energy debating the district court's holding about Mr. Washington's expectation of privacy in the motel room in general. The government says that Mr. Washington had no reasonable expectation of privacy in Room 41 after check-out time. Mr. Washington replies that the only reason why he didn't gather up and take his belongings away before check-out was his unlawful arrest. In these circumstances, he says, we should hold he maintained an expectation of privacy in the motel room even after check-out.

We don't have to resolve this debate. Either way, the district court's alternative and narrower holding about Mr. Washington's expectation of privacy in the phone remains and we see no way we might lawfully reverse it. The district court held that even if Mr. Washington maintained an expectation of privacy in the room itself, he didn't retain such an expectation with respect to the phone in particular because he effectively threw it away. In the district court's view, Mr. Washington "clearly abandoned" the phone, with no intent to retrieve it, whether or not he was still a resident of the room. It is long settled that

abandoned property may be searched without a warrant. *See United States v. Jones*, 707 F.2d 1169, 1172 (10th Cir. 1983). This includes items left as trash in a motel room for motel employees to collect and dispose of. *See United States v. Bruce*, 396 F.3d 697 (6th Cir. 2005).

Abandonment, of course, "must be voluntary" and evince a lack of any continued "expectation of privacy in the object" in question. *United States v. Hernandez*, 7 F.3d 944, 947 (10th Cir. 1993). But once a district court makes a finding of abandonment, we may reverse only if the appellant is able to show that finding is "clearly erroneous." *Id.* And this is a burden Mr. Washington has failed to carry. To be sure, a good argument can be made for both sides in this case. One might interpret Mr. Washington's actions as suggesting a desire to hide the phone from possible police inspection rather than as suggesting a desire to throw it away. In that event, of course, a reasonable expectation of privacy and the Fourth Amendment's protections would remain intact. *See Smith v. Ohio*, 494 U.S. 541, 543-44 (1990); *United States v. Garzon*, 119 F.3d 1446 (10th Cir. 1997). But the facts are also susceptible to the district court's interpretation — that Mr. Washington treated the phone as trash and expected it to be removed by motel staff at some point. Nothing in the record compels the inference that Mr. Washington would have taken the phone with him had he been allowed to check out. *See Bruce*, 396 F.3d at 707. And given that, we are not free to reverse. Mr. Washington's burden isn't just showing that two interpretations of the facts are

available, or even that one is better than the other. For us to reverse, he must show that the district court's interpretation was not just "possibly or even probably wrong but pellucidly so." *United States v. Ludwig*, 641 F.3d 1243, 1247 (10th Cir. 2011). This he has not done.

The care with which the district court approached the question confirms this conclusion. In the district court, there was another piece of evidence the government wished to use — a receipt showing that Mr. Washington purchased items used in the drug trafficking enterprise. Mr. Washington tried to discard the receipt after he was arrested and before it could be inventoried, yet the government retrieved it. The government argued abandonment here, too, but the district court was unimpressed. The district court held that here at least the facts suggested a wish to conceal evidence from the government, not an abandonment of it. The government doesn't appeal this disposition, so we don't have to rule on it one way or the other, but it certainly shows that the district court was well aware of the difference for Fourth Amendment purposes between abandoning property and concealing it; took care to attend to this difference; and was open to arguments both ways on the question.

The judgment is affirmed.

ENTERED FOR THE COURT


Neil M. Gorsuch
Circuit Judge